UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CRIMINAL ACTION NO. 14-19-DLB-EBA**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

vs.                  **MEMORANDUM OPINION AND ORDER**

**CHARLES PAUL WILHERE**                                  **DEFENDANT**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion to Suppress evidence seized from his gun safe during a search conducted on May 28, 2014. (Doc. # 16). After the Government filed its response (Doc. # 17), the Court heard oral argument from both parties on January 20, 2015. Assistant United States Attorney Robert McBride appeared on behalf of the Government; Attorney David Mussetter appeared on behalf of Defendant, who was also present. The proceedings were recorded by Official Court Reporter Joan Averdick. At the conclusion of the hearing, the matter was submitted for the Court's review. For the reasons set forth herein, Defendant's Motion to Suppress is **granted**.

**II.  FACTUAL AND PROCEDURAL BACKGROUND**

On May 26, 2014, Aaron Adkins was killed inside Defendant's residence in Boyd County, Kentucky. (Doc. # 16 at 1).[1] Deputies from the Boyd County Sheriff's Department

---

[1] Although both parties' briefs indicate that Mr. Adkins was killed on May 28, 2014, the Court has confirmed that the incident actually occurred on May 26, 2014.

arrived at the scene early that morning and found evidence of an altercation between Defendant and Mr. Adkins. (*Id.*) The Boyd County coroner was asked to respond, along with various other law enforcement personnel, including Detective Kelley, Sergeant Goble and Trooper Duvall of the Kentucky State Police. (*Id.* at 2). The coroner confirmed that Mr. Adkins had not been shot and therefore did not die from a gunshot wound. Defendant was detained by Sergeant Goble and taken to KSP Post 14 for interrogation. (*Id.*)

Later that day, Trooper Duvall obtained a warrant to search Defendant's residence (the "First Warrant"). (*Id.*) Signed by Boyd District Judge Gerald Reams, the First Warrant described the incident as a "shooting" and authorized Trooper Duvall to search for "[w]eapons and any and all other evidence of crime." Upon executing the First Warrant, Trooper Duvall seized the victim's body and clothing, and observed a large gun safe within Defendant's home. (Doc. # 17 at 1).

Two days later, on May 28, Detective Kelley obtained another search warrant, signed by Boyd District Judge Scott Reese (the "Second Warrant"). (Doc. # 16 at 13). The affidavit for the Second Warrant requests permission for the following:

> DNA buccal swab to be taken from the above name [sic] suspect and dental mouth impression for bite mark registration. There is also a large safe at the residence and the contents of which must be inventoried. The attached Search Warrant should also authorize the Officer to open and inventory the contents of the safe, which is believed to contain evidence relivant [sic] to this investigation.

(Doc. # 16 at 8).[2]

---

[2] The Second Affidavit also states, in form language and without explanation, that the property to be seized constitutes: (1) stolen or embezzled property; (2) property or things used as the means of committing a crime; (3) property or things in the possession of a person who intends to use it as a means of committing a crime; (4) property or things in the possession of a person to whom it was delivered for the purpose of concealing it or preventing its discovery and which is intended to be used as a means of committing a crime; and (5) property of things consisting of

In support of the requested search, the affidavit provides that "Charles Wilhere is a suspect in a murder investigation in which the victim sustained bite marks during a physical altercation with the suspect. There is possibly DNA on the body of the victim on or around the bite marks, which will be compaired [sic] to the DNA of the suspect along with the dental impressions." (Doc. # 16 at 9). Beyond this, the affidavit provides no information as to what the safe was believed to contain, or how its contents would be relevant to the investigation.

Once the Second Warrant was issued, Detective Kelley and other law enforcement officials searched the gun safe and found certain firearms that were illegal to possess unless properly registered. (Doc. # 16 at 4). ATF Agent Ron Sabotchick inspected the firearms along with Defendant's registration paperwork. (*Id.*) Agent Sabotchick discovered that there were no registration forms for two firearms in particular. (*Id.*) Those firearms were seized and Defendant was subsequently indicted in this matter on two counts of violating of 26 U.S.C. § 5861(d). The instant Motion to Suppress followed.

**III.   ANALYSIS**

    1.   <u>The search of Defendant's gun safe was not based on probable cause.</u>

In determining if probable cause exists to support the issuance of a search warrant, the magistrate's task is "to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him,...there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v.*

---

evidence which tends to show that a crime has been committed or that a particular person has committed a crime. (*Id.* at 10).

*Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The supporting affidavit "must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (internal citation omitted); *see also United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) ("[T]he affidavit must suggest that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought."). It is not enough for the affidavit to simply state that "the owner of [the] property is suspected of [a] crime." *Id.*

When deciding if an affidavit establishes probable cause, reviewing courts "look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)). Accordingly, an affidavit is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

Defendant contends that the search of his gun safe was not based on probable cause. Having reviewed the four corners of the affidavit supporting the Second Warrant, the Court agrees. The affidavit states that the victim sustained bite marks during the altercation with Defendant. (Doc. # 16 at 9). It further provides that Defendant is suspected of murder and that there might be DNA on the victim's body that could be compared to Defendant's DNA. (*Id.*) These facts clearly establish probable cause for both

4

the DNA buccal swab and the dental mouth impression. However, with respect to the gun safe, the affidavit patently fails to demonstrate any nexus between the place searched and the evidence sought. There is nothing to suggest that evidence of illegal activity was located within the safe, and Detective Kelley's statement that it would contain "evidence relevant to the investigation" is completely unsubstantiated. (*Id.* at 8).[3] Accordingly, the Court finds that the search of Defendant's safe was not based on probable cause.

2.  The Leon good faith exception does not apply.

The "sole purpose" of the exclusionary rule "is to deter future Fourth Amendment violations." *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). Thus, it should be used "as a last resort," and only where "the deterrence benefits of suppression . . . outweigh its heavy costs." *Id.* at 2427. In keeping with this principle, the Supreme Court has recognized an exception to the exclusionary rule, holding that evidence should not be suppressed if it was "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984).

The *Leon* "good faith" exception is not boundless, however. The Sixth Circuit has recognized four scenarios in which it does not apply: (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. *McPhearson*, 469 F.3d at 525.

---

[3] The Government conceded these points during oral argument.

Applicable here, the third scenario in *McPhearson* negates the good faith exception if "evidence [is] seized under a warrant that issued on the basis of a 'bare bones' affidavit." *Id.; see also United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) ("Affidavits that are 'so lacking in indicia of probable cause' have come to be known as 'bare bones' affidavits.") (citing *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998)). An affidavit is bare bones when it "contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Laughton*, 409 F.3d at 748 (citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)).

Determining if an affidavit is bare bones for purposes of negating the good faith exception is a less demanding inquiry than the threshold question of whether probable cause exists. *Id.* It is possible for an affidavit to contain a "minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided [did not] establish probable cause.'" *United States v. Lane*, 186 F. App'x 584, 585 (6th Cir. 2006) (internal quotations and citation omitted). So long as there is "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched," the good faith exception will still apply. *Laughton*, 409 F.3d at 749.

However, much like the probable cause determination, any such evidence must exist within the four corners of the affidavit. *Id.* at 752 ("Whether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what

6

is in that affidavit.").[4] Moreover, the test for good-faith reliance is not "what the executing officer did believe or even could have believed. Rather, it is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* at 750 (citing *Leon*, 468 U.S. at 923 n.23).

The Government contends that the search is saved by the *Leon* good faith exception because Detective Kelley's reliance on the Second Warrant was objectively reasonable. At oral argument, the Government emphasized that the victim was killed inside Defendant's home, and that Detective Kelley was aware that the victim had gone shooting with Defendant shortly before the altercation. Further, the Government noted that despite having knowledge of these facts, Detective Kelley properly chose to obtain a warrant prior to searching the gun safe. He was accompanied by the Commonwealth's Attorney, who helped prepare the warrant, and it was signed by Boyd District Judge Reese. Accordingly, the Government submits that Detective Kelley's actions do not constitute the manner of flagrant misconduct that the exceptions to *Leon* are intended to prevent.

---

[4] Shortly after *Laughton*, the Sixth Circuit explained that the four corners approach, as it pertains to assessing good faith reliance, may not be appropriate in every case. *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005). In *Frazier*, the extra-affidavit information had been explicitly communicated to the issuing magistrate, who then requested it be included in the supporting affidavits. *Id.* at 530. Although five of the six affidavits were properly supplemented, one was not. *Id.* The Court found this oversight nothing more than a "scrivener's error," and reasoned that suppression would not "serve the purposes of the exclusionary rule, and [would] have no deterrent effect on future police misconduct." *Id.* at 535. The Court also declared, as a general matter, that "a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and *revealed to the issuing magistrate*. *Id.* at 536 (emphasis added). However, *Frazier* provides only a narrow exception. In *United States v. Hython*, for instance, the Sixth Circuit held that the "Frazier exception does not apply" because the record "does not indicate an awareness on the part of the issuing magistrate of the [extra-affidavit information]." 443 F.3d 480, 488 (6th Cir. 2006). Likewise, here, there is nothing to suggest that any information not included in the affidavit had been communicated to the Boyd District Judge; indeed, this case is a far cry from the situation in *Frazier*. Accordingly, the Court will apply the four-corners approach pursuant to *Laughton*.

The Government's position is unavailing for two important reasons. First, pursuant to *Laughton*, the Court cannot consider Detective Kelley's thoughts, or the additional information he knew but failed to include in the affidavit.[5] Second, Detective Kelley's conduct fits squarely within the third scenario recognized in *McPhearson*. As it pertains to Defendant's safe, the affidavit supporting the Second Warrant is undoubtedly a bare bones affidavit. It contains no facts suggesting that evidence of illegal activity would be found inside the safe, and is based entirely upon unfounded suspicions and beliefs. The nexus between the place searched and the evidence sought is not "minimally sufficient," but non-existent, and a reasonably well trained officer would have known that the search was illegal despite the Boyd District Judge's authorization. For these reasons, and despite the fact that he sought a warrant before conducting the search (as is his obligation), the Court finds that the officers' actions were objectively unreasonable, and therefore preclude application of the *Leon* good faith exception.

As a final matter, the Government urged the Court at oral argument to review *United States v. Kinison*, 710 F.3d 678 (6th Cir. 2013), a case from the Eastern District of Kentucky that was recently overturned by the Sixth Circuit. There, police obtained a warrant to search Kinison's home for evidence related to allegations involving child pornography. *Id.* at 681. The search produced hundreds of illegal images and videos, and Kinison was subsequently indicted. *Id.* The district court granted Kinison's motion to

---

[5] *See supra* note 4. Moreover, assuming *arguendo* that information outside the affidavit was fair game, the Court would focus heavily on the fact that the Boyd County Coroner determined that the victim was never actually shot. This information, which Detective Kelley was certainly aware of, strongly refutes the argument that his reliance on the Second Warrant was objectively reasonable.

suppress, finding the police could not have believed in good faith that the warrant was properly issued. *Id.* at 680. However, the Sixth Circuit reversed, holding that the *Leon* exception did apply based on the information contained in the supporting affidavit.[6]

Although *Kinison* is instructive here, it does not favor the Government's position. The supporting affidavit in *Kinison* included several pages of text messages sent by Kinison to an informant, stating that he had viewed illegal child pornography on his computer and describing his plans to join a group that sexually exploited children. *Id.* at 680. As one would certainly expect, the Sixth Circuit found that the affidavit was not bare bones, explaining that the nexus "between Kinison's home and the child pornography allegations" was "supplied by the text messages stating that Kinison was viewing child pornography on the internet, and [the informant's] subsequent averment that Kinison was viewing child pornography on his home computer." *Id.* at 686. Given the dearth of information contained in the affidavit in this case, *Kinison* provides yet additional support for the Court's decision not to apply the *Leon* good faith exception. Accordingly, the Government's reliance on *Kinison* is misplaced.[7]

## IV. CONCLUSION

For the reasons set forth herein, the Court concludes that the affidavit supporting the Second Warrant did not establish probable cause to justify the search of Defendant's safe.

---

[6] The Sixth Circuit also held that the affidavit established probable cause. *Id.* at 685.

[7] The Government also seemed to suggest that *Kinison* and *U.S. v. Davis*, 131 S. Ct. 2419 (2011) somehow reinterpreted the thrust of *Leon*. The Court disagrees. Both cases simply reiterate the fact that *Leon* itself signified a change in how the exclusionary rule should be applied. *See Kinison*, 710 F.3d at 685 ("In *Davis*, the Court also noted that *beginning with [Leon]*, the cost-benefit analysis was recalibrated . . . to focus the inquiry on the flagrancy of the police misconduct at issue.") (emphasis added). The emphasis on police misconduct *began* with *Leon*, and is therefore fully incorporated into the Sixth Circuit precedent cited herein.

Moreover, the *Leon* good faith exception does not save the search because the officers' actions were not objectively reasonable.  Accordingly,

**IT IS ORDERED** as follows:

(1)     Defendant's motion to suppress evidence from the gun safe (Doc. # 16) be, and hereby is, **GRANTED**; and

(2)     The United States shall file a Status Report with twenty (20) days of the date of entry of this Order advising the Court of its Intentions in this matter.

This 31st day of January, 2015.

Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\Ashland\14-19 MOO granting Ds motion to suppress.wpd